ELECTRONICALLY
FILED
Apr 17 2026
U.S. DISTRICT COURT
Northern District of WV

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

UNITED STATES OF AMERICA for the use of
CORNERSTONE RESTORATION SERVICES
LLC, d/b/a SERVICEMASTER BY
CORNERSTONE,

and

CORNERSTONE RESTORATION SERVICES
LLC, d/b/a SERVICEMASTER BY
CORNERSTONE,

     Plaintiffs,

v.

BROCK LOGISTICS LLC, d/b/a ADUDDELL
INDUSTRIES & ROOFING, LLC, PANACEA
CONSTRUCTION GROUP LLC, and WEST
BEND INSURANCE COMPANY,

     Defendants.

Case No. **1:26-CV 43 (Kleeh)** _____

## COMPLAINT

Plaintiffs United States of America for the use of Cornerstone Restoration Services LLC, d/b/a ServiceMaster by Cornerstone, and Cornerstone Restoration Services LLC, d/b/a ServiceMaster by Cornerstone ("Cornerstone"), by and through undersigned counsel, state as follows for their Complaint against Brock Logistics LLC, d/b/a Aduddell Industries & Roofing, LLC, Panacea Construction Group LLC, and West Bend Insurance Company.

## PARTIES

1.     Use Plaintiff and Plaintiff Cornerstone is a Tennessee limited liability company with its principal place of business located at 9575 Macon Road, Cordova, Tennessee 38016. At all times relevant hereto, Cornerstone was a supplier of mitigation and repair materials and services

in connection with certain repair and mitigation work to the structure, including the roof, at the Louis A. Johnson Veterans' Administration Medical Center located at 1 Medical Center Drive, Clarksburg, West Virginia 26301 (the "Medical Center") pursuant to Contract No. 36C24524C0013 (the "Project").

2.    Upon information and belief, Panacea Construction Group LLC ("Panacea") is a Wisconsin limited liability company with its principal place of business located at 30 Pinion Court, Dubois, Wyoming 82513.  At all times relevant hereto, Panacea was the general contractor for the Project.

3.    Upon information and belief, Brock Logistics LLC, d/b/a Aduddell Industries & Roofing, LLC ("Aduddell") is an Oklahoma limited liability company with its principal place of business located at 532 NW Mercantile Place, Suite 106, Port St. Lucie, Florida 34986.  At all times relevant hereto, Aduddell was Panacea's first-tier subcontractor for the Project.

4.    Upon information and belief, West Bend Insurance Company ("West Bend" and together with Panacea and Aduddell, "Defendants") is a Wisconsin corporation with its principal place of business located at 1900 South 18th Avenue, West Bend, Wisconsin 53095. At all times relevant hereto, West Bend was a registered insurance company in West Virginia.

## JURISDICTION

5.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this matter arises under 40 U.S.C. § 3131 *et seq.* (the "Miller Act") and involves claims arising from the Project described herein, for which a certain payment bond was issued by and on behalf of Panacea, as principal, and West Bend, as surety.  This is an action to collect sums owed for materials and services provided by Cornerstone as a subcontractor of Panacea and Aduddell on the Project.

2

6.    This Court also has jurisdiction pursuant to 28 U.S.C. § 1332, as this action involves a matter in which the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states.

7.    This Court further has supplemental jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1367, because the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 for the Miller Act claims, and all other claims asserted in this Complaint "are so related to the original jurisdiction claims that they form part of the same case or controversy under Article III of the United States Constitution."

8.    Venue is proper in this Court pursuant to 40 U.S.C. § 3133(b)(3)(B) as the Project at issue was located in Clarksburg, Harrison County, West Virginia, and the materials and services provided by Cornerstone were provided at that location.

## STATEMENT OF FACTS

9.    Upon information and belief, Panacea was engaged as the general contractor for the Project at the Medical Center.

10.    In connection with Panacea's work on the Project, and in accordance with the Miller Act, Panacea, as principal, and West Bend, as surety, executed and delivered a payment bond on May 15, 2024 identified as Payment Bond No. 2298097 in the total sum of $7,719,953.00 (the "Payment Bond").  A true and accurate copy of the Payment Bond is attached and incorporated herein as **Exhibit A**.

11.    The Payment Bond obligates Panacea to "promptly make payment to all persons having a direct relationship with [Panacea] or a subcontractor of [Panacea] for furnishing labor, material or both" in connection with the Project.

3

12.    Panacea subcontracted with Aduddell to perform certain portions of the work to the Project.

13.    Panacea also subcontracted with Cornerstone to provide labor, materials, and services to the Project pursuant to a Commercial Service Agreement dated August 24, 2025 (the "First Agreement").

14.    Aduddell then subcontracted with Cornerstone to provide additional labor, materials, and services to the Project pursuant to a Commercial Service Agreement dated September 5, 2025, and, while Cornerstone was performing under that agreement, Aduddell requested execution of a third Commercial Service Agreement form dated September 21, 2025. The September 5, 2025 and September 21, 2025 agreements are hereinafter referred to as the "Second Agreement" and, together with the First Agreement, as the "Agreements".

15.    At the request of Panacea and Aduddell, Cornerstone furnished labor, materials, and services to the Project from on or about August 24, 2025 to on or about October 4, 2025 pursuant to the terms of the Agreements, fully performing each of its duties thereunder.

16.    More than ninety days but less than one year have elapsed since Cornerstone last provided materials or services to Panacea and Aduddell for the Project.

17.    Cornerstone's work on the Project is evidenced by the following invoices (the "Invoices"), which Cornerstone sent to Panacea and Aduddell, respectively, during and upon the completion of its work:

        a.    Invoice 2025-0897, issued on September 30, 2025, providing for a total of $325,526.93 in water mitigation materials, services, and related charges;

        b.    Invoice 2025-0898, issued on September 30, 2025, providing for a total of $292,206.07 in construction services and related charges;

4

c.      Invoice 2025-0922, issued on October 13, 2025, providing for a total of $104,476.59 in water mitigation materials, services, and related charges; and

d.      Invoice 2025-0923, issued on October 13, 2025, providing for a total of $53,619.32 in construction services and related charges.

18.     Payment under each of the Invoices was due within ten days of the Invoice date. True and accurate copies of the Invoices are attached and incorporated herein as **Exhibit B**.

19.     Despite Cornerstone's repeated demands for payment of the Invoice amounts, both Panacea and Aduddell have failed and refused to pay Cornerstone for the labor, materials, and services it furnished to the Project under the Agreements.

20.     On December 16, 2025, Cornerstone sent to Defendants a Notice and Demand for Payment under Payment Bond No. 2298097 in connection with the unpaid balance of $617,733.00 pursuant to Invoices 2025-0897 and 2025-0898, a true and accurate copy of which is attached and incorporated herein as **Exhibit C**.

21.     On December 31, 2025, Cornerstone submitted to Defendants a Second Notice and Demand for Payment under Payment Bond No. 2298097 in connection with the additional unpaid balance of $158,095.91 pursuant to Invoices 2025-0922 and 2025-0923, a true and accurate copy of which is attached and incorporated herein as **Exhibit D**.

22.     To date, none of the Defendants have paid Cornerstone any portion of the $775,828.91 in materials and services furnished by Cornerstone for the Project in accordance with the Agreements or the Payment Bond.

23.     Except as otherwise may have been waived or excused, Cornerstone has satisfied all conditions precedent to bringing this action.

5

## COUNT I – BREACH OF CONTRACT
### (Against Panacea)

24.    Cornerstone restates and incorporates by reference all preceding paragraphs as if fully set forth herein.

25.    The First Agreement constitutes a valid and binding contract between Panacea and Cornerstone.

26.    Cornerstone fully satisfied its obligations under the terms of the First Agreement by furnishing labor, materials, and services to the Project, and thereafter invoiced Panacea for its services.

27.    Despite multiple demands for payment, Panacea breached the First Agreement by failing to pay Cornerstone for its work on the Project.

28.    Panacea's failure to pay Cornerstone constitutes a material breach of the First Agreement.

29.    As a direct and proximate result of Panacea's breach of the First Agreement, Cornerstone has suffered direct, consequential, and incidental damages in excess of $75,000.00 and is entitled to judgment against Panacea.

## COUNT II – BREACH OF CONTRACT
### (Against Aduddell)

30.    Cornerstone restates and incorporates by reference all preceding paragraphs as if fully set forth herein.

31.    The Second Agreement constitutes a valid and binding contract between Aduddell and Cornerstone.

6

32.    Cornerstone fully satisfied its obligations under the terms of the Second Agreement by furnishing labor, materials, and services to the Project, and thereafter invoiced Aduddell for its services.

33.    Despite multiple demands for payment, Aduddell breached the Second Agreement by failing to pay Cornerstone for its work on the Project.

34.    Aduddell's failure to pay Cornerstone constitutes a material breach of the Second Agreement.

35.    As a direct and proximate result of Aduddell's breaches of the Second Agreement, Cornerstone has suffered direct, consequential, and incidental damages in excess of $75,000.00 and is entitled to judgment against Aduddell.

## COUNT III – MILLER ACT BOND CLAIM
### (Against West Bend)

36.    Cornerstone restates and incorporates by reference all preceding paragraphs as if fully set forth herein.

37.    Cornerstone had a direct relationship with Panacea, as principal under the Payment Bond, and with Aduddell, as Panacea's subcontractor, for furnishing labor, material, or both in the prosecution of the work provided for in the underlying general contract.

38.    Pursuant to the Payment Bond, West Bend, as surety, obligated itself to pay Cornerstone for its labor, materials, and services furnished to Panacea and Aduddell on the Project in the event they did not promptly make payment to Cornerstone.

39.    Because Panacea and Aduddell have not promptly paid Cornerstone for its work, West Bend is liable for all unpaid amounts for which the Payment Bond is applicable.

40.    Cornerstone has satisfied all conditions required for payment on the Payment Bond as set forth in the Payment Bond itself and pursuant to the Miller Act, 40 U.S.C. § 3133.

41. Despite demand, West Bend has failed and refused to make payment to Cornerstone under the Payment Bond.

42. As a direct and proximate result of West Bend's breach of its obligations under the Payment Bond, Cornerstone is entitled to judgment against West Bend, as surety, in an amount in excess of $75,000.00 for the past-due principal balance, together with interest, costs, and attorney fees.

### COUNT IV – PROMISSORY ESTOPPEL
### (Against Panacea and Aduddell)

43. Cornerstone restates and incorporates by reference all preceding paragraphs as if fully set forth herein.

44. Panacea and Aduddell promised to pay Cornerstone for its labor, materials, and services furnished to the Project.

45. Panacea and Aduddell expected that their promise would induce action by Cornerstone to furnish labor, materials, and services to the Project.

46. The promises by Panacea and Aduddell actually induced Cornerstone to furnish labor, materials, and services to the Project and Cornerstone substantially relied on the promise of payment to Cornerstone's detriment.

47. Cornerstone's reliance on the Defendants' promises was foreseeable to Panacea and Aduddell and was reasonable.

48. Despite Cornerstone having invoiced for its work and requested payment, the Defendants have wrongfully denied payment and failed to pay, such that injustice will result to Cornerstone if Panacea's and Aduddell's promise to pay is not enforced.

49. As a direct result of the Defendants' failure to honor their promises, Cornerstone is entitled to judgment against Panacea and Aduddell in excess of $75,000.00.

## COUNT V – QUANTUM MERUIT
### (Against Panacea and Aduddell)

50.     Cornerstone restates and incorporates by reference all preceding paragraphs as if fully set forth herein.

51.     Panacea and Aduddell requested and directed Cornerstone to furnish labor, materials, and services to the Project and for the benefit of Panacea and Aduddell.

52.     At Panacea's and Aduddell's request, Cornerstone in fact furnished labor, materials, and services to the Project as described above, thereby conferring valuable benefits on Panacea and Aduddell for which Panacea and Aduddell have failed to pay Cornerstone.

53.     Panacea and Aduddell accepted the benefits conferred by Cornerstone when they knew and understood that Cornerstone expected to be paid for the labor, materials, and services it furnished to the Project.

54.     Panacea's and Aduddell's acceptance and retention of the benefits without payment, and under the circumstances, amount to a windfall and make it inequitable for them to retain the benefits without payment for their value to Cornerstone.

55.     In the alternative or in addition to the contractual causes of action stated herein, or in the event that any of the Agreements are determined to be void, avoidable, or nonexistent, then Cornerstone is nevertheless entitled to be paid, and to judgment against Panacea and Aduddell for, the reasonable value of its labor, materials, and services under a theory of quantum meruit in an amount not less than $75,000.00.

### PRAYER FOR RELIEF

WHEREFORE, having complained of Defendants, Cornerstone prays the Court as follows:

1.     That Cornerstone have and recover of Panacea damages in excess of $75,000.00 for breach of the First Agreement;

9

2. That Cornerstone have and recover of Aduddell damages in excess of $75,000.00 for breach of the Second Agreement;

3. That Cornerstone have and recover of West Bend, as surety, damages in excess of $75,000.00 on the Payment Bond;

4. That, in the alternative to its claims against Panacea and Aduddell on the basis of contract, Cornerstone have and recover from Panacea and Aduddell, jointly and severally, damages in excess of $75,000.00 on theories of promissory estoppel and quantum meruit;

5. For an award of pre-judgment and post-judgment interest as provided by law;

6. For an award of Cornerstone's costs, including attorney fees, as provided by law;

7. For a trial by jury on all issues so triable; and

8. For such further relief as the Court deems appropriate.

This 17th day of April, 2026.

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**

*/s/ Bryan G. Scott*
Bryan G. Scott, WV Bar No. 12902
100 N Main Street, Suite 2300
Winston-Salem, NC 27101
Telephone: (336) 358-6856
bscott@bakerdonelson.com
*Counsel for Cornerstone Restoration Services LLC,
d/b/a ServiceMaster by Cornerstone*